1  REGINALD TERRELL, ESQ.
   THE TERRELL LAW GROUP
   Post Office Box 13315, PMB #148
2  Oakland, California 94661
   Telephone: (510) 237-9700
3  Facsimile: (510) 237-4616

4  Email: Reggiet2@aol.com

5

6  Attorneys for Plaintiff and the class

7



8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11  Julian Carroll, and individual, on behalf        CASE NO.: **C12-03512**
    of himself and all others similarly situated,
12
                                                     CLASS ACTION COMPLAINT FOR
13              Plaintiff,                            DAMAGES

14        vs.

15
    PepsiCo, Inc., Tropicana Products,
16  Inc.,

17              Defendants.

18

19                        **CLASS ACTION COMPLAINT**

20        Plaintiff Julian Carroll ("Plaintiff"), individually and on behalf of all others similarly

21  situated, brings this action against Defendants PepsiCo, Inc. ("PepsiCo") and Tropicana
22
23  Products, Inc. ("Tropicana") (collectively, "Defendants" or "Tropicana"), upon information and

24  belief, alleges as follows:

25                             **BACKGROUND**

26        1.       Tropicana Orange Juice is not natural! Fresh squeezed orange juice is unstable
27
28  and has a short shelf-life and to extend the shelf-life of its products for mass distribution,

Tropicana processes its orange juice and storing it at tank farms frozen in nitrogen. This process strips orange juice of its flavor and aroma. Before the product is packaged and sold to consumers, Tropicana adds chemical "flavor packets" to the liquid so smells and taste like orange juice.

2.    Tropicana's processing technique changes the nature of the juice that originally came from the orange. Tropicana knows that labels matter and is aware consumers prefer "natural" products and is capitalizing on this desire by deceptively promoting and marketing its orange juice as "natural," despite the multiple levels of scientific engineering its orange juice undergoes.

3.    Specifically, during the processing of Tropicana Orange Juice: (1) oranges from Florida, Brazil and Mexico are combined to cover up any varietal and geographic differences; (2) naturally present air is removed from the intercellular spaces of the juice through the deaeration process; (3) there is also a reduction and deactivation of naturally occurring enzymes and microbial activity through pasteurization; (4) the orange juices are stored in large vats for a year or sometimes longer; and (5) chemically engineered "flavor packets" are added to mimic the flavors of natural freshly squeezed orange juice to what otherwise is an unpleasant orangey sugar water.

4.    Tropicana also uses the oils from the skins of oranges imported from Mexico and Brazil to flavor its orange juice. These oranges are not subject to the same pesticide regulation and scrutiny as those grown in the United States. And when these oranges are squeezed for their flavor, their pesticides are squeezed in along with their oils.

5.    Tropicana does not mention the added flavoring and aroma and or the processing that alters the essential nature of the juice in its orange juice advertisements and or label. Instead,

Tropicana promotes its orange juice product with an image of a straw stuck directly into an orange, as if the consumer were purchasing juice fresh from that orange. This image, coupled with the phrase "Natural Orange Juice" in large, prominent type, resonates Tropicana's false and deceptive message to the consumer.

6. Further, as a result of its false and deceptive message, including on the basis that its orange juice is "all natural," Tropicana prices its orange juice at a premium over its competitor's products made from concentrate.

7. Tropicana's ability to extract a premium for its orange juice product is a testament to the success of its deceptive branding and marketing campaign. Tropicana's market share is typically approximately 40-50 percent of all the orange juice sold each year.

8. Plaintiff seeks relief in this action individually, and as a class action on behalf of all purchasers of Tropicana Orange Juice labeled and marketed as being "natural orange juice," for violations of California's Deceptive and Unfair Trade Practices Act, California's Advertising Act, unjust enrichment, and breach of express warranty created by Defendants' advertising, including their labeling.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d) (2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of Plaintiff's are citizens of states different from Defendants. Further, the class members all reside in a state other than the states in which Defendants are domiciled.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this District and because Defendants:

(a)     Are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of their products in this District;

(b)     Conduct substantial business in this District; and

(c)     Are subject to personal jurisdiction in this District.

## THE PARTIES

11.     Plaintiff Julian Carroll is a citizen of Oakland, Alameda County, California and an individual consumer residing in Alameda County, California, who during the proposed class period, purchased "Tropicana Pure Premium" orange juice which has no pulp and is labeled as "100% Pure & Natural Orange Juice with Calcium and Vitamin D" and is "Never from Concentrate." Plaintiff has been purchasing Tropicana Orange Juice at least weekly for the past several years. Plaintiff purchased Tropicana Orange Juice from Safeway on Grand Avenue in Oakland, California. He was exposed to and relied on defendants misrepresentations, including that its orange juice is "natural orange juice." Plaintiff would not have purchased Tropicana Orange Juice had he known the truth about Tropicana's representations, including that it was extensively processed and flavored. Plaintiff did not receive the benefit of his bargain in each purchase of Tropicana Orange Juice. Plaintiff further paid a price premium when he purchased Tropicana Orange Juice.

12.     Defendant PepsiCo, is and at all relevant times was, a Delaware corporation with its principal place of business located at 700 Anderson Hill Road, Purchase, New York 10577.

13.     Defendant Tropicana is and at all relevant time was a division of PepsiCo. Tropicana manufactures, markets, and sells Tropicana Orange Juice nationwide.

## SUBSTANTIVE ALLEGATIONS

14. Tropicana's marketing materials, advertising, website, labeling, packaging and point of sale materials, represent that its orange juice is "natural orange juice." In fact, the labeling for Tropicana Orange Juice, including reproduction of the labeling on its website, Facebook, Twitter, and on its YouTube advertisements, prominently features the image of a straw stuck in an orange with the large-type claim: "natural orange juice."

15. However, Tropicana Orange Juice is not "natural orange juice." Defendants heavily process Tropicana Orange Juice by pasteurizing, deaerating, and storing it for long periods of time at a "tank farm" and under a nitrogen blanket, which strips the juice of its flavor and aroma. Defendants then re-flavor the product with chemical "flavor packets" before it is packaged into a carton and sold to the consumer.

16. Defendants, through deceptively marketing their Tropicana Orange Juice product, unscrupulously capitalize on consumers' heightened demand for natural products.

17. To preserve the orange juice from oxidization, Tropicana uses deaeration to remove any dissolved oxygen from its juice.

18. Air is an essential component of natural orange juice. According to leading scientists who study fruit juices air is naturally present in the intercellular spaces of fruit. Oxygen in air, present in the spaces between the juice vesicles, and from the surroundings, saturates the juice producing oxidation reactions that often result in browning, changes in aroma, and loss of nutritional value. These reactions are exacerbated by the increase in temperature during pasteurization and reduce the overall quality of the product during storage.

19. Importantly, when orange juice is stripped of oxygen, it is also stripped of important volatile compounds that provide flavor and aroma.

CLASS ACTION COMPLAINT 5

20. Tropicana does not disclose that its Tropicana Orange Juice undergoes this deaeration process.

21. Defendants' orange juice is also pasteurized to improve its shelf-life. However, this process also alters the delicate flavor and reduces the aromatic quality of the juice. Pasteurization is a form of thermal processing that reduces, inactivates, or eliminates enzyme and microbial activity in orange juice to extend its shelf-life. Pasteurization, however, compromises the aroma composition and flavor of the fresh juice, producing undesirable off-flavor and off-odor compounds.

22. Tropicana then adds ethyl butyrate to its orange juice to offset the effect of its pasteurization process.

23. Defendants' orange juice is then stored in nitrogen gas in multi-million gallon tanks at a tank farm in the Florida. The juice is stored for weeks, months, and sometimes up to and over a year. An increase in storage time results in a proportionate decrease in sweet odor, strength of the orange odor, sweet flavor, sour flavor, and orange aftertaste.

24. Defendants know that their deaeration and pasteurization processes change the physical and chemical properties of orange juice and that increased storage time and temperature conditions of storage can cause orange juice to deteriorate in taste and nutritional value.

25. Nevertheless, as depicted in Defendants' marketing image of the straw stuck in an orange, Defendants deceptively advertise that it's orange juice is squeezed from fresh oranges, misleadingly representing that the juice is fresh, when, in fact, its product is made from orange juice that has been pasteurized, deaerated, and stored for as long as one year.

26. Once all the volatiles are stripped from the orange juice and it is processed, the remaining liquid is a sugary orange liquid that lacks the flavor and aroma of orange juice. Without the addition of flavoring and aroma the juice would be nearly undrinkable.

27. To add flavor back to the liquid, Defendants re-flavor the product to taste like natural orange juice. To do this, Defendants use flavor packets in what they tout as natural orange juice.

28. These flavor packets are scientific engineered and are designed by from processed orange oils and essence. Thus, contrary to Defendants' marketing message, the distinctive taste of Tropicana is the product of a recipe on a "blend card" created by scientists, and not a product of nature.

29. Flavorists design the flavor packets to highlight certain aromas and flavors associated with orange juice by fractionating orange oil and essence into individual components, reformulating them, and blending them in varying mixtures. The aroma and flavoring added to the orange juice bears little resemblance to the natural orange oil and essence that leaves the juice during deaeration and or that is altered during pasteurization and or storage.

30. Tropicana also adds water-soluble orange essence, which dilutes the orange juice. Tropicana adds this water-soluble essence because it provides the "freshest" characteristics to the orange juice.

31. Regardless of the season, Tropicana Orange Juice tastes exactly the same. Tropicana is able to maintain this consistency because its orange juice is the product of a scientifically designed recipe that offsets the flavor differences that would otherwise naturally arise from making juice from different varieties and different blends of oranges that ripen at different times.

32. Through its marketing and advertising, including on its product labeling, Tropicana falsely claims its Tropicana Orange Juice is "natural orange juice" while deliberately omitting any reference to its use of flavor packets.

33. Tropicana does not disclose to consumers on its labeling and or mention in its advertising that its orange juice is dependent upon and enhanced by added flavoring and aroma

CLASS ACTION COMPLAINT

7

34. Tropicana does, however, indicate on its website that the orange oil extracted from the same fruit that is juiced is reintroduced to the juice for "consistent quality and flavor." At the same time, however, Tropicana suggests that the flavor of its oranges is protected by gentle squeezing and that the handling of its oranges provides that "unique, straight-from-the-orange Tropicana taste." This is simply a false representation as to the true process by which Defendants manufacture Tropicana Orange Juice.

35. Defendants omit material details about how Tropicana Orange Juice is produced, processed, and flavored both in their advertisements and on product packaging and labeling. Instead, Tropicana Orange Juice is deceptively marketed as "natural orange juice" made from fresh squeezed oranges.

36. Defendants have engaged in a uniform marketing and advertising program representing that Tropicana Orange Juice is natural and made from fresh oranges to induce consumers to purchase Tropicana Orange Juice. These representations are prominently displayed on Tropicana Orange Juice labels, and within Tropicana Orange Juice advertisements, promotional materials and websites.

37. Tropicana Orange Juice commercials, print advertising, and on-line marketing is false and misleading because it fails to inform the consumer: (1) that it has been unnaturally processed; 2) the extent to which it has been unnaturally processed; (3) how it is stored and preserved, and for how long; and (4) that its flavor and aroma is scientifically engineered. Instead, Defendants' advertising and labeling deceptively states that the product is natural orange juice.

38. When Florida oranges are out of season, Tropicana Orange Juice is a mixture of Florida juice, some or all of which has been stored from previous seasons, and orange juice

CLASS ACTION COMPLAINT 8

processed in Brazil and shipped to the United States. Processed orange juice from Brazil is exported to ports in the United States in converted bulk carriers, tankers, and other massive shipping vessels. These orange juice tankers carry millions of gallons of orange juice cargo and contribute more than 20% of the juice contained in Tropicana Orange Juice.

39.     Upon information an belief, oranges were also shipped in from Mexico. However, oranges from Mexico and Brazil are not subject to the same pesticide regulation and scrutiny as those grown in the United States, and when those oranges are squeezed for their flavor, their pesticides are also squeezed into the juice

40.     Defendants' advertising and labeling representations that Tropicana Orange Juice is natural pertain to the composition, attributes, characteristics, nutritional value, health qualities and value of Tropicana Orange Juice. As a result of Defendant's misleading marketing campaign, Plaintiff and members of the class purchased products that they would not have purchased or paid more than they otherwise would have been willing to pay if the orange juice they purchased had been advertised accurately.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this lawsuit on behalf of himself and the proposed class members (the "California Class" and "Multistate Class" collectively, the "class") under Rule 23(b) (2) and (3) of the Federal Rules of Civil Procedure. The proposed classes consist of:

*(a) California Class: All persons who purchased Tropicana Orange Juice in the State of California.*

*(b) Multistate Class: All persons who purchased Tropicana Orange Juice in the United States.*

42.     Contingent upon additional information obtained through further investigation and discovery, the foregoing definition of the class may be expanded or narrowed by amendment or amended complaint.

43.     Specifically excluded from the class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

44.     *Numerosity*. The members of the class are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff alleges that the class contains many thousands of members. The precise number of class members is unknown to Plaintiff. The true number of class members is known by the Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, or published notice.

45.     ***Existence and predominance of common questions of law and fact.*** Common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual class members. These common legal and factual questions include, but are not limited to, the following:

(a)     Whether Defendants knew that its representations were false but continued to disseminate them;

(b)     Whether Defendants' claims are true, misleading, or reasonably likely to deceive;

CLASS ACTION COMPLAINT                                                                                  10

(c) Whether Defendants had adequate substantiation for their claims prior to making them;

(d) Whether Defendants engaged in false or deceptive advertising;

(e) Whether Defendants violated California Unfair Business Practice Stat. §§17200 et seq.;

(f) Whether Defendants' conduct constitutes violations of the California Deceptive and Unfair Trade Practices Act;

(g) Whether Defendants breached an express warranty to Plaintiff and the class;

(h) Whether Plaintiff and the class have sustained monetary loss and the measure of that loss;

(i) Whether Plaintiff and the class are entitled to punitive damages; and

(j) Whether Plaintiff and class members are entitled to declaratory and injunctive relief.

46. *Typicality.* Plaintiff's claims are typical of the claims of the members of the class in that Defendants deceived Plaintiff in the very same manner as it deceived each member of the class.

47. *Adequacy of representation.* Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the class.

48. *Superiority.* A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be

entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for the class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

49.    In the alternative, the class may also be certified because:

(a)    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members that would establish incompatible standards of conduct for the defendant;

(b)    The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Defendants has acted or refused to act on grounds generally applicable to the class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the class as a whole.

50.    The claims asserted herein are applicable to all customers throughout the United States who purchased Tropicana Orange Juice.

51. Adequate notice can be given to class members directly using information maintained in Defendants' or its direct purchasers' records, or through notice by publication.

52. Damages may be calculated, in part, from the sales information maintained in Defendants' records, so that the cost of administering a recovery for the class can be minimized. However, the precise amount of damages available to Plaintiff and the class is not a barrier to class certification.

53. Unless a class is certified, Defendants will retain monies received as a result of their conduct that was taken from Plaintiff and the class. Unless a class-wide injunction is issued, Defendants will continue to commit the violations alleged herein, and the class will continue to be deceived.

## CAUSES OF ACTION
### COUNT 1
### Violations of the CLRA
### On Behalf of Plaintiff and the Class

54. Plaintiff realleges and incorporates by reference the allegations throughout this complaint as if fully set forth herein.

55. This cause of action is brought pursuant to California's CLRA. Plaintiff is a consumer as defined by California's Civil Code Section 1761(d). Tropicana orange juice is a good pursuant to California Civil Code and within the meaning of CLRA.

56. Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code Section 1770(a) which were intended to result in, and did result in, the sale of Tropicana orange juice:

(5) Representing that [the product have] …… characteristics, uses [or] benefits ….. which they do not have;

CLASS ACTION COMPLAINT 13

(7) Representing that [the Product] are of a particular standard, quality, grade ..... if they are another;

(9) Advertising goods ...... with intent not to sell them as advertised; and

(16) Representing that the subject of the transaction has been supplied in accordance with a previous representation when it has not.

57. Defendants violated the CLRA by marketing and advertising its Tropicana orange juice in the manner described herein, when it knew the labeling and advertisements were unsubstantiated, false and misleading.

58. Defendants intended that Plaintiff and class members would rely on the false and misleading representations and any reasonable consumer would deem the false and misleading representations material to the purchase of Tropicana.

58. As a result of Defendants' conduct, Plaintiff and the class members suffered injury in fact, loss of money or property, and otherwise have been damaged.

59. Pursuant to California Civil Code Section 17829(d), Plaintiff and the class members seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

60. Pursuant to Section 1782 of the CLRA, by letter Plaintiff notified Defendants in writing of the particular violations of Section 1770 of the CLRA and demanded Defendants rectify the problems associated with the actions detailed above and to give notice to all affected consumers of its intent to so act.

61. Defendants have failed to rectify and or agree to rectify the problems associated with the actions detailed above within 30 days of the date of written notice pursuant to Section 1782 of the Act. Accordingly, Plaintiff seeks actual, punitive and statutory damages, as appropriate, and all other relief permitted under the CLRA.

CLASS ACTION COMPLAINT                                                                      14

62. Defendants' conduct is malicious, fraudulent and wanton.

## COUNT II
### Violation of the FAL
### On Behalf of Plaintiff and the California Class

63. Plaintiff realleges and incorporates by reference the allegations throughout this complaint as if fully set forth herein.

64. The misrepresentations, acts and non-disclosures by Defendants of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of the FAL.

65. At all times relevant hereto, Defendants advertisements and promotions regarding Tropicana were untrue, misleading and likely to deceive the public. Defendants have deceived Plaintiff and other consumers, including class members, by representing that Tropicana is all natural, when, in fact, it is not.

67. Defendants engaged in the false and or misleading advertising and marketing alleged herein with intent to directly and or indirectly induce the purchase of Tropicana orange juice.

68. The false and misleading advertising was material to Plaintiff and the class members in connection with their respective decisions to purchase Tropicana orange juice.

69. Plaintiff and the class members relied on the false advertisements and misrepresentations, which played a substantial part in the influencing the decision of Plaintiff and the class members to purchase Tropicana orange juice. Defendants intended that Plaintiff and other consumers would rely on the false and misleading representations.

70.     In making and disseminating the statements and or omissions alleged herein, Tropicana knew, or should have now, the statements and or omissions were untrue and or misleading, and acted in violation of the FAL.

71.     Plaintiff and the class members have suffered injury in fact and have lost money and or property as a result of Defendants' unfair competition, as more fully set forth herein. Plaintiff and the class members have been injured because they overpaid for Tropicana orange juice, since the value of the Product was diminished at the time of sale. Plaintiff and the class members have been injured because had they been made aware that Tropicana is not all natural, they would not have purchased Tropicana or would have paid substantially less for it.

72.     Defendants, through their acts of unfair competition, have unfairly acquired money from Plaintiff and the class members. Plaintiff can better determine the amount of the amount of money Defendants improperly obtained through discovery.

73.     Plaintiff seeks an order requiring Defendants to undertake a public information campaign to inform class members of its prior acts and or practices.

74.     Unless Defendants are enjoined from continuing to engage in such wrongful actions and conducts, class members will continue to be damaged by Defendants' false and or misleading advertising.

75.     Plaintiff also seeks an order requiring Defendants to (a) make full restitution of all monies wrongfully obtained and (b) disgorge all ill-gotten revenues and or profits, together with interest thereon.

76.     Plaintiff also seeks attorneys' fees and costs pursuant to, inter alia, Code of Civil Procedure Section 1021.5.

CLASS ACTION COMPLAINT

16

## COUNT III
### Violation of the UCL
### On Behalf of Plaintiff and the California Class

75. Plaintiff realleges and incorporates by reference the allegations throughout this complaint as if fully set forth herein

76. The UCL defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. California Business & Professions Code Section 17200, et seq. The UCL also provides for injunctive relief and restitution for violations.

Defendants' conduct as alleged herein constitutes unlawful, unfair and or fraudulent business acts and practices.

By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of the UCL.

Defendants' business practices and acts are "fraudulent' because they deceived and or are likely to deceive Plaintiff and the class members. Specifically, Defendants intentionally and misleadingly marketed and sold Tropicana orange juice as all natural.

Defendants' business practices, and each of them, are "unfair" because they offend established public policy and or are immoral, unethical, oppressive, unscrupulous and or substantially injurious to consumers in that consumers are led to believe that Tropicana orange juice has qualities and benefits it does not have.

The injury to Plaintiff and the class members greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

There were reasonably available alternatives to further Defendants legitimate business interest, other than the conduct described herein.

CLASS ACTION COMPLAINT

17

Defendants' acts and practices are "unlawful' because Defendants engaged in false and or misleading advertising, in violation of Civil Code Section 1572, 1688, 1709, 1710, the FAl and the CLRA and also are violate of Defendants' warranties.

Plaintiff and the class members reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

Plaintiff and the class members have suffered injury in fact and have lost money and or property as a result of Defendants' unfair competition, as more fully set forth herein. Plaintiff and the class members have been injured because they overpaid for Tropicana orange juice. Plaintiff and the class members also have been injured because, had they been made aware that Tropicana is not all natural as represented, they would not have purchased Tropicana, or would have paid substantially less for the product.

Defendants, though its acts of unfair competition, has unfairly acquired money from Plaintiff and the class members.

Unless Defendants are enjoined from continuing to engage in the unlawful, unfair, fraudulent, untrue and deceptive business acts and practices as described herein, consumers will continue to be exposed to and damaged by Defendants' unfair competition.

Plaintiff seeks an order requiring Defendants to undertake a public information campaign to inform class members of its prior acts and or practices.

Plaintiff also seeks all relief available to him and the class members pursuant to the FAL.

Plaintiff also seeks attorneys' fees and costs pursuant to, inter alia, Code of Civil Procedure Section 1021.5.

## COUNT III
### Breach of Express Warranty

**On Behalf of Plaintiff, the California Class and the Multistate Class**

75.     Plaintiff realleges and incorporates by reference the allegations throughout this complaint as if fully set forth herein

76.     Plaintiff, and each member of the California Class and Multistate Class, formed a contract with Defendants at the time Plaintiff and the other members of the California Class and Multistate Class purchased the products. The terms of that contract include the promises and affirmations of fact made by Defendants on their product labels and through their marketing campaign, as described above. This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the California Class and Multistate Class on the one hand, and Defendants on the other.

77.     All conditions precedent to Defendants' liability under this contract, including notice, has been performed by Plaintiff and the California Class and Multistate Class.

78.     Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the California Class and Multistate Class by not providing the product which could provide the benefits described above.

79.     As a result of Defendants' breach of its contract and warranties, Plaintiff and the California Class and Multistate Class have been damaged in the amount of the purchase price of the Products they purchased.

## COUNT IV
### Unjust Enrichment
**On Behalf of Plaintiff, the California Class, and the Multistate Class**

80.     Plaintiff realleges and incorporates by reference the allegations throughout this complaint as if fully set forth herein.

81. This Count is brought in the alternative. *See* Fed. R. Civ. P. 8(e) (2).

82. Plaintiff, the California Class and Multistate Class conferred a benefit upon Defendants by paying for a product with benefits that could not be provided or delivered.

83. Defendants voluntarily accepted and retained the benefit of the monies paid by Plaintiff, the California Class and Multistate Class.

84. Defendants have been enriched, at the expense of Plaintiff, the California Class and Multistate Class, by retaining monies from Product purchasers for benefits which they did not provide.

85. Plaintiff and the other members of the California Class and Multistate Class who have paid for benefits that could not be provided or delivered by Defendants have been damaged as a result of Defendants' unjust enrichment and are entitled to a refund, plus interest thereupon.

86. As a direct and proximate result of Defendants' misconduct, Plaintiff, the California Class and the Multistate Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement in the amount necessary to restore them to the position they would have been in if Defendants have not retained monies for benefits which they could not provide or deliver.

87. Plaintiff and the class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment against Defendants as follows:

A. Certifying the California Class and Multistate Class as requested herein, appointing Plaintiff as the representative of the class, and appointing Plaintiff's counsel lead counsel;

B.      Ordering that Defendants are financially responsible for notifying all members of the class of the alleged misrepresentations and omissions discussed herein;

C.      Declaring that Defendants' conduct violates the statutes referenced herein;

D.      Awarding Plaintiff and the proposed class members damages;

E.      Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed class members;

F.      Awarding declaratory and injunctive relief, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

G.      Ordering Defendants to engage in corrective advertising;

H.      Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

I.      Awarding attorneys' fees and costs; and

J.      Providing such further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues triable.

Respectfully submitted,

Dated: July 6, 2010                    THE TERRELL LAW GROUP

_____
REGINALD TERRELL, ESQ.

REGINALD TERRELL, ESQ.
THE TERRELL LAW GROUP
Post Office Box 13315, PMB #148
Oakland, California 94661
Telephone: (510) 237-9700
Facsimile: (510) 237-4616